UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL BENETTI, f/k/a Michael Wiseley,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES MARSHAL SERVICE, in its official capacity, and TSHIKANA SCOTT, VERA JONES, MONICA MORRIS, AARON JOSEPH PRITZKAU, MICHAEL VAN SICKLE, and KELLY FATH, in their individual and official capacities,<br><br>Defendants. | 5:22-CV-05038-KES<br><br><br>ORDER GRANTING DEFENDANTS SCOTT, JONES, MORRIS, AND PRITZKAU'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL |

Plaintiff, Michael Benetti f/k/a Michael Wiseley, commenced this pro se civil rights lawsuit under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Docket 1. Benetti alleges that defendants failed to provide adequate medical treatment for a broken hand he sustained while in the custody of the United States Marshal Service (USMS). Defendants Scott, Jones, Morris, and Pritzkau filed a motion to dismiss Benetti's claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket 50. These defendants filed four declarations in support of their motion to dismiss. Dockets 52–55. The court notified the parties, in accordance with Federal Rule of Civil Procedure 12(d), that the court intends to

treat Scott, Jones, Morris, and Pritzkau's motion to dismiss (Docket 50) as a motion for summary judgment and set deadlines for the parties to submit materials pertinent to the motion for summary judgment. Docket 58 at 3–4.

## FACTUAL BACKGROUND

When considering a motion for summary judgment, the court recites the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). In accordance with the court's Rule 12(d) notice and D.S.D. Civ. LR 56.1.A, Scott, Jones, Morris, and Pritzkau filed a statement of material facts presenting each material fact "in a separate numbered statement with an appropriate citation to the record in the case." *See* Docket 77. As the party opposing summary judgment, Benetti "must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1.B. "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1.D. When the court denied Benetti's second motion for appointment of counsel, the court informed Benetti that his response to Scott, Jones, Morris, and Pritzkau's motion to dismiss, which the court intends to treat as a motion for summary judgment, should comply with Federal Rule of Civil Procedure 56 and the District of South Dakota's Local Rule 56.1 and attached copies of these rules to the order. Docket 72 at 4–5. Benetti did not respond to Scott, Jones, Morris, and

Pritzkau's statement of material facts, but Benetti sent a letter outlining his response to the declarations filed in support of the motion to dismiss. *See* Docket 92. The court will recite facts set forth in defendants' statement of material facts, which are deemed admitted due to Benetti's noncompliance with D.S.D. Civ. LR 56.1.B. *See Jones v. United Parcel Serv., Inc.,* 461 F.3d 982, 989–91 (8th Cir. 2006) (stating that a district court does not abuse its discretion in deeming defendants' statement of facts admitted due to noncompliance with local rules). But if Benetti's letter provides different facts, the court will include Benetti's version of the facts.

The USMS contracts with local jails to house federal pre-trial detainees and those convicted of federal crimes who have not yet been transferred to the custody of the Bureau of Prisons. Docket 77 ¶ 10. Benetti was in USMS custody at the Pennington County Jail from January 25, 2021, to July 21, 2022. *Id.* ¶ 45. In August 2021, while in USMS custody, Benetti alleges he broke his hand. Docket 1 at 4. Benetti alleges that the medical staff at the jail incorrectly wrapped his hand in a splint, which caused his hand to be crooked and deformed.[1] *Id.* According to Benetti, he was not permitted to see a doctor until five weeks after he first broke his hand, at which point he needed

---

[1] Benetti's claims against the Pennington County Jail did not survive screening and were dismissed without prejudice. Docket 6 at 7. The court liberally construed Benetti's complaint to assert a state-law medical malpractice claim against the unnamed Pennington County Jail medical staff members who treated his broken hand, but the court declined to exercise supplemental jurisdiction over Benetti's state-law claim against Pennington County Jail and dismissed the state-law medical malpractice claim without prejudice. *Id.* at 6. It does not appear that Benetti attempted to pursue this claim in state court.

3

corrective surgery. *Id.*; Docket 92 at 2. Benetti underwent surgery on June 29, 2022. Docket 77 ¶ 31. Benetti alleges that he experienced pain, discomfort, and embarrassment due to the delay of nearly a year in treating his injured hand. Docket 92 at 1, 5.

When a USMS detainee requires non-emergency medical care, the local jail sends a request to the USMS District Office seeking pre-authorization. Docket 77 ¶ 11. A USMS policy directive provides that emergency medical care will be provided immediately to prisoners with no pre-authorization required. *Id.* ¶ 12. Benetti asserts that a broken bone is a medical emergency and should be treated immediately without awaiting pre-authorization, but he does not identify any USMS policy directive to support his assertion. Docket 92 at 2.

During the time Benetti was in USMS custody at the Pennington County Jail, Pritzkau worked as an investigative analyst in the USMS District Office in Rapid City, South Dakota. Docket 77 ¶ 43. Pritzkau's duties included receiving requests for medical care for USMS detainees from local jails, entering those requests into a USMS database, and then either preauthorizing the request or forwarding the request to the USMS Prisoner Operations Division, Office of Medical Operations, Medical Management Board (MMB) for further review. *Id.* ¶ 44. The USMS MMB maintains and tracks requests for medical care in the CAPTURE database. *Id.* ¶ 14. Each submission for medical attention is assigned a number in the CAPTURE database. *Id.* Before implementation of the CAPTURE database, the USMS relied upon Publication 9 for a list of medical procedures that may be summarily approved by the District Office without

4

consulting with MMB. *Id.* ¶ 15. The CAPTURE database includes on-line auto-approval protocols based on the list of procedures in Publication 9. *Id.* Essentially the CAPTURE database has superseded Publication 9. *Id.* If a procedure is not contained in Publication 9, as implemented by the CAPTURE database, the District Office must refer the medical submission to MMB for pre-authorization. *Id.* ¶ 16. The District Office does not have authority to deny a medical submission. *Id.* ¶ 17.

The United States Public Health Service (USPHS) is one of the nation's uniformed services tasked with protecting, promoting, and advancing the health and safety of the nation. *See* https://www.usphs.gov/about-us. USPHS officers serve in governmental agencies, including the USMS, as physicians, nurses, dentists, and other health and science professionals. *Id.* Scott, Jones, and Morris were commissioned officers of the USPHS assigned to work with the USMS to evaluate medical care requests for pre-trial detainees during the time that Benetti was in USMS custody at the Pennington County Jail. Docket 77 ¶¶ 7–8. Scott, Jones, and Morris's duties included reviewing and determining the medical necessity of USMS prisoner medical submissions. *Id.* ¶ 9. If a medical submission is not pre-authorized at the District Office and is sent to MMB for further review, a Utilization Reviewer, such as Scott, Jones, or Morris, reviews the request and supporting documentation from the jail. *Id.* ¶ 17. If the supporting documentation is adequate to support the request, the submission is approved. *Id.* If additional information is required, the Utilization Reviewer returns the submission to the District Office. *Id.* Alternatively, the Utilization

Reviewer may refer the submission to a USMS physician or allied health professional with advanced medical training, such as a nurse practitioner, if the submission is complex or the Utilization Reviewer seeks guidance from a higher level decisionmaker. *Id.*

After a submission is approved or denied by MMB, the submission is returned to the Distrist Office through the CAPTURE system. *Id.* ¶ 18. The District Office is then responsible for forwarding the approval or denial to the jail. *Id.* Once the District Office informs the jail that MMB has pre-authorized a medical procedure, neither the District Office nor MMB have any involvement in scheduling the procedure. *Id.* ¶ 19. The jail coordinates with the medical provider to schedule pre-authorized procedures. *Id.* After a submission is authorized, the authorization remains in effect until the medical procedure is completed or the prisoner leaves USMS custody, whichever occurs first. *Id.* ¶ 20. MMB internal policy requires that all medical submissions must be processed within five business days of receipt of all necessary documentation. *Id.* ¶ 21.

The requests for medical treatment for Benetti's injured hand are documented in the CAPTURE database. *Id.* ¶ 22. On August 27, 2021, the Pennington County Jail requested a medical consultation and x-ray of Benetti's right hand. *Id.* ¶ 23; Docket 52-3. Pritzkau approved the request on the day that it was submitted to USMS District Office in Rapid City. Docket 77 ¶ 23; Docket 52-3. An x-ray is within the authority of the District Office to authorize pursuant to USMS Publication 9. Docket 77 ¶ 23; Docket 52-2 at 4.

6

On September 23, 2021, the District Office received two medical requests for Benetti, one for an orthopedic referral for a right-hand fracture and one for a post-operative follow-up appointment. Docket 52-4; Docket 52-5; Docket 77 ¶ 24. Pritzkau approved the request for a post-operative follow-up appointment the same day it was submitted. Docket 52-5; Docket 77 ¶ 24. Pritzkau timely forwarded the orthopedic referral request to a Utilization Specialist, Scott. Docket 52-4. On September 27, 2021, Pennington County Jail submitted another request for an orthopedic surgery referral, which Pritzkau timely entered in the CAPTURE database for consideration by MMB. Docket 52-6. The next day, Jones approved the referral. *Id.*; Docket 77 ¶ 25. After Jones approved the September 27, 2021, orthopedic referral, Scott closed the September 23, 2021, request for an orthopedic referral as a duplicate request. Docket 52-4; Docket 77 ¶ 25.

On October 14, 2021, Pennington County Jail submitted a request for consultation with a new surgeon. Docket 52-7. On the same day that the request was submitted to the District Office, Pritzkau entered a comment clarifying that the original surgeon with whom the surgery was scheduled no longer works for the hospital and the new surgeon wants to complete his own consult with the patient prior to surgery. *Id.* On the same day, Morris noted that the submission was considered a duplicate and had already been approved. *Id.*

On November 30, 2021, the District Office received a request for referral to a hand specialist for reevaluation of Benetti's right hand prior to surgery.

Docket 77 ¶ 26. Pritzkau approved this request the same day it was received per the auto-approval protocols in the CAPTURE system. *Id.*; Docket 52-8. On December 30, 2021, the jail submitted a request for a CT of Benetti's right hand. Docket 52-9. The jail also submitted a request for a follow-up appointment if the CT was approved. Docket 52-10. Pritzkau timely entered these requests in the CAPTURE database, and Morris approved both requests the same day they were submitted. Docket 52-9; Docket 52-10; Docket 77 ¶ 27.

On February 18, 2022, a request for surgery on Benetti's right hand was submitted. Docket 52-11; Docket 77 ¶ 28. Pritzkau timely entered the request in the CAPTURE database, and Scott referred the request to Fath, a USMS provider. Docket 52-11; Docket 77 ¶ 28. On February 22, 2022, Fath denied the surgery request "based on insufficient clinical evidence to support the medical necessity of the requested consult[.]" Docket 52-11. Fath noted that during the initial exam by the orthopedic surgeon, the surgeon had "indicated that the surgery would require various degrees of repair for the chronic injuries that includes previously healed fractures . . . [and] the documentation did not indicate any functional deficits that would affect the prisoner's ability to perform ADLs, attend appointments or cop-outs, eat meals or walk for exercise." *Id.* Fath concluded by documenting that the request could be resubmitted and requesting that the jail notify MMB "if there are specific clinical concerns or risk factors that warrant reconsideration of th[e] request or a follow-up appointment." *Id.* On February 25, 2022, a request for surgery was

8

resubmitted and approved on February 28, 2022. Docket 52-12; Docket 77 ¶ 29.

On March 15, 2022, a request for preoperative telehealth appointment was submitted and approved on March 17, 2022. Docket 52-13; Docket 77 ¶ 30. Benetti underwent right hand surgery on June 29, 2022. Docket 77 ¶ 31. On July 20, 2022, a request for a four-week follow-up appointment with x-rays was submitted and approved on July 21, 2022. Docket 52-14; Docket 77 ¶ 32.

## DISCUSSION

### I. Motion for Summary Judgment

#### A. Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48 (emphasis omitted).

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." *Id.* at 250.

### B. Defendants Scott, Jones, and Morris

#### 1. Individual Capacity Claim for Damages

It is undisputed that Scott, Jones, and Morris, at all relevant times, were acting as commissioned officers of the USPHS. Docket 77 ¶¶ 7–8. Scott, Jones, and Morris argue that an individual-capacity *Bivens* claims is not cognizable against USPHS employees. Docket 51 at 9–11. A Federal Tort Claims Act (FTCA) action against the United States[2] is the exclusive remedy for any personal injury caused by a public health service officer or employee

---

[2] When the court screened Benetti's complaint, the court liberally construed his complaint to allege a negligence claim against the USMS under the FTCA. Docket 6 at 11–12. But that claim was dismissed without prejudice because Benetti had not administratively exhausted his claim by first presenting it to the USMS, as required by 28 U.S.C. § 2675(a). Docket 6 at 12.

performing a medical or related function "while acting within the scope of his office or employment." 42 U.S.C. § 233(a). In *Hui v. Castaneda*, 559 U.S. 799, 805–06 (2010), the United States Supreme Court held that 42 U.S.C. § 233(a) provides immunity to members of the USPHS from *Bivens* claims arising out of the performance of medical functions within the scope of their employment. *See also Rueben v. Outlaw*, 614 F. App'x 861 (8th Cir. 2015) (per curiam). Benetti does not dispute that Scott, Jones, and Morris were acting within the scope of their employment with the USPHS when they took action or made decisions regarding his medical care while in custody of the USMS. Docket 77 ¶¶ 7–8; Docket 92 at 3. Scott, Jones, and Morris are entitled to judgment as a matter of law on Benetti's individual capacity claims for damages.

### 2. Individual Capacity Claims for Injunctive Relief

Scott, Jones, and Morris argue that Benetti's claim for injunctive relief should be dismissed because equitable remedies are available only against defendants sued in their official capacity. Docket 51 at 28–30. In its 1915A screening order, the court dismissed Benetti's official capacity claims. Docket 6 at 8, 14. After Scott, Jones, Morris, and Pritzkau filed their motion to dismiss, the court vacated that portion of its 1915A screening dismissing Benetti's claims against the United States Marshals Service and unknown United States Marshals Service agents in their official capacities and reinstated Benetti's claims for injunctive relief. Docket 65 at 6–9. Although Scott, Jones, and Morris are not entitled to summary judgment on Benetti's claim for injunctive relief for the reasons set forth in the memorandum in support of their motion

11

to dismiss, Docket 51, defendants' statement of undisputed facts, Docket 77, establishes that they are entitled to summary judgment on Benetti's claim for injunctive relief because the claim is now moot. In his complaint, which was filed on April 25, 2022, Benetti seeks an order directing the USMS to treat and fix his hand. Docket 1 at 7 ("I'd like my hand treated and fixed . . . as I've suffered painfully for 7 month[s] now[.]"). But it is undisputed that Benetti underwent hand surgery on June 29, 2022. Docket 52 ¶ 32; Docket 77 ¶ 31. Thus, Benetti's request that the court order the USMS to treat and fix his hand is moot, and Scott, Jones, and Morris's motion to dismiss Benetti's claim for injunctive relief is granted.

In one of his submissions, Benetti requests "[i]njunctive relief for the process and policy change, and time off [his] sentence for some form of relief[.]" Docket 89 at 3. "A request for injunctive relief is moot if the injunctive relief sought would no longer have any meaning for the party seeking it." *Turning Point USA at Ark. State Univ. v. Rhodes*, 409 F. Supp. 3d 677, 684 (E.D. Ark. 2019). It is not clear which process or policy Benetti seeks to change, but he is no longer being held in the Pennington County Jail in the custody of the USMS. He is in the custody of the Bureau of Prisons at the United States Penitentiary in Tucson, Arizona. Docket 70 ¶ 1. Thus, he is no longer subject to any policies, processes, or procedures of the Pennington County Jail or policies, processes, or procedures applicable to pretrial detainees in the custody of the USMS. This court cannot order a reduction in Benetti's sentence as a form of relief in this *Bivens* action. Habeas corpus is the exclusive remedy for a

prisoner seeking a reduction in his sentence. *Heck v. Humphrey,* 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 488–90 (1973)).

### C. Defendant Pritzkau

#### 1. Individual Capacity Claim for Damages

Pritzkau is not an officer or employee of the USPHS. Pritzkau is an investigative analyst in the USMS District Office in Rapid City, South Dakota. Docket 77 ¶ 43. Thus, Pritzkau is not entitled to immunity pursuant to 42 U.S.C. § 233(a). Rather, Pritzkau argues that Benetti's claim for damages against him should be dismissed on the basis of *Egbert v. Boule,* 596 U.S. 482 (2022). Docket 51 at 12–24. In *Egbert,* the United States Supreme Court reiterated that lower courts should exercise caution in expanding *Bivens* into a new context, which is now a "disfavored judicial activity." 596 U.S. at 491. Although the Eighth Circuit has not yet considered whether a *Bivens* claim is viable applying the standard set forth in *Egbert,* other courts have recognized that a *Bivens* action is not viable in most, if not virtually all, circumstances. *See, e.g., Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[E]xpanding *Bivens* . . . is an action that is impermissible in virtually all circumstances.").

In *Bivens,* the Supreme Court recognized an implied cause of action under the Fourth Amendment against federal officers for handcuffing a man in his own home without a warrant. 403 U.S. at 389, 397. The Supreme Court has only recognized a *Bivens* remedy in two other contexts: a Fifth Amendment gender discrimination claim against a Congressman for firing his female staffer,

13

*Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against federal prison officials for failure to treat an inmate's serious medical need that resulted in his death, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (recognizing that "[t]hese three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."). A *Bivens* remedy is not available for all constitutional violations and expanding the implied cause of action under *Bivens* is "a 'disfavored' judicial activity." *Id.* at 135 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The Eighth Circuit Court of Appeals has adopted a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (quoting *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005)).

In deciding whether to extend a *Bivens* remedy, the court engages in a two-step inquiry. *See Egbert*, 596 U.S. at 492. First, the court considers whether the claim at issue is " 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (alteration in original) (quoting *Ziglar*, 582 U.S. at 139). If the claim has not been previously recognized as a *Bivens* claim, the court proceeds to step two. At step two, the court asks "if there are 'special factors [that] counsel[] hesitation' " before implying a new cause of action "in the absence of affirmative action by Congress." *Ziglar*, 582 U.S at 136 (quoting *Carlson*, 446 U.S. at 18). Related to this second step is the question of whether an alternative remedy exists. *Id.* at

14

137; *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). If a court has "reason to pause before applying *Bivens* in a new context or to a new class of defendants—[it should] reject the request." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

The Supreme Court has recognized that '[i]n the limited setting where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.' " *Iqbal*, 556 U.S. at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)). Benetti must demonstrate that Pritzkau, through his "own individual actions, has violated the Constitution." *Id.* at 676. Benetti has not demonstrated that Pritzkau's individual actions are related to or caused any delay in treating his broken hand. Thus, it is not necessary for the court to consider whether Benetti's *Bivens* claim arises in a new context or whether special factors counsel against allowing Benetti's claim to proceed.

Pritzkau had limited involvement in reviewing and authorizing submissions for medical care for Benetti when Benetti was being held at the Pennington County Jail. There is no evidence that Pritzkau possessed the requisite culpable intent required to state a viable claim for deliberate indifference to a serious medical need. Pritzkau's duties were limited to entering a submission into CAPTURE and either (1) authorizing the submission pursuant to the pre-approval processes contained in the CAPTURE database, or (2) forwarding the submission to MMB (i.e., Scott, Jones, or Morris) for further review. Docket 77 ¶ 44. Pritzkau did not have authority to deny or defer

15

Benetti's medical submissions, *id.* ¶ 17, and was not responsible for scheduling the surgery after surgery was approved, *id.* ¶ 19. Further, it is undisputed that Pritzkau timely performed his duties each time Pennington County Jail submitted a medical request for Benetti. *Id.* ¶¶ 23–32.

In conclusion, while Benetti has demonstrated that there is a genuine issue of material fact whether the treatment for his broken hand was timely requested and timely scheduled after it was authorized,[3] it is undisputed that Pennington County Jail, not the USMS District Office, is responsible for submitting medical requests and scheduling Benetti's treatment after the treatment was authorized. *Id.* ¶ 19. Pritzkau is entitled to judgment as a matter of law on Benetti's individual capacity claims for damages.

### 2.     Individual Capacity Claims for Injunctive Relief

As previously discussed, Benetti's claim for injunctive relief is moot. Thus, Pritzkau is entitled to judgment as a matter of law on Benetti's claim for injunctive relief.

## II.   Motion for Appointment of Counsel

When Benetti filed his complaint, he filed a motion for appointment of counsel. Docket 4. The court denied Benetti's motion because his claims do not appear to be factually or legally complex and the court believed that Benetti could adequately present his claims at the time. Docket 6 at 14. Benetti filed a

---

[3] In one of his motions for appointment of counsel, Benetti questions why it took five weeks for him to see a doctor after he broke his hand and more than seven months for the surgery to occur after a physician determined surgery was necessary if the named defendants followed policy and procedure and performed their duties professionally. Docket 90 at 2–3.

second motion for appointment of counsel after the USMS and defendants Scott, Jones, Morris, and Pritzkau filed motions to dismiss. Docket 56. The court denied Benetti's second motion for appointment of counsel, but the court informed Benetti that his response to Scott, Jones, Morris, and Pritzkau's motion to dismiss, which the court intends to treat as a motion for summary judgment, should comply with Federal Rule of Civil Procedure 56 and the District of South Dakota's Local Rule 56.1 and attached copies of these rules to the order. Docket 72 at 4–5. Benetti submitted a third motion for appointment of counsel. Docket 76. In this third motion, Benetti seeks counsel stating he is not a lawyer and does not know what he is doing. *Id.* The court denied this motion, stating that "Benetti's contention that he is not a lawyer and does not know what he is doing is not a reason to appoint counsel." Docket 81 at 6. But the court sua sponte extended Benetti's time to respond to Scott, Jones, Morris, and Pritzkau's motion to dismiss, which the court intends to treat as a motion for summary judgment, and once again reminded Benetti that his response should comply with Federal Rule of Civil Procedure 56 and D.S.D. Civ. LR 56.1. *Id.* at 7.

      Shortly after the court denied Benetti's third motion for appointment of counsel, Benetti filed a fourth motion for appointment of counsel. Docket 90. In his fourth motion, Benetti reiterated the arguments that he raised in support of his previous motions for appointment of counsel and appears to request discovery from Pennington County Jail and the medical providers who treated his injured hand. *Id.* at 4–5. But neither Pennington County nor the providers

who treated his injured hand are defendants in this case. Benetti's fourth motion for appointment of counsel (Docket 90), is denied for the same reason that his previous motions were denied.

Thus, it is ORDERED:

1. That defendants Scott, Jones, Morris and Pritzkau's motion to dismiss (Docket 50), which the court has treated as a motion for summary judgment, is granted.

2. That Benetti's motion for appointment of counsel (Docket 90) is denied.

Dated February 15, 2024.

                                      BY THE COURT:

                                      /s/ *Karen E. Schreier*
                                      KAREN E. SCHREIER
                                      UNITED STATES DISTRICT JUDGE